IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MANOULA, LLC d/b/a CHINA      )
GROVE FAMILY RESTAURANT,      )
                             )
          Plaintiff,          )
                             )
     v.                       )          1:21-cv-00718
                             )
OHIO SECURITY INSURANCE       )
COMPANY,                      )
                             )
          Defendant.          )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

Before the court is the motion of Defendant Ohio Security Insurance Company ("Ohio Security") to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 6.) Plaintiff Manoula, LLC d/b/a China Grove Family Restaurant ("Manoula") filed a response in opposition (Docs. 10, 11), and Ohio Security replied (Doc. 13). For the reasons set forth below, the motion will be granted and the complaint will be dismissed.

**I.    BACKGROUND**

The facts, as alleged in the complaint and viewed in the light most favorable to Manoula, show the following:

From January 1, 2017, to January 1, 2018, Manoula was enrolled in a Commercial Lines Policy insurance contract issued and administered by Ohio Security. (Doc. 1-2 ¶ 4.) The policy[1] obliged

_____

[1] Although Manoula's complaint did not attach the insurance policy, the

Ohio Security to "pay for direct physical loss of or damage to Covered Property at the premises . . . caused by or resulting from any Covered Cause of Loss." (Doc. 1-3 at 146.) "Covered Property" was defined as including "personal property" and "the building or structure described in the Declarations, including: . . . Fixtures, including outdoor fixtures." (Id.) Under its "Business Income (and Extra Expense) Coverage Form," the policy would "pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'" (Id. at 45.) The policy also covered "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss," including "Extra Expense[s]" to "[m]inimize the 'suspension' of business if you cannot continue 'operations'" and "repair or replace property." (Id. at 45-46.) Finally, the policy prescribed that legal action must be "brought within three years after the date on which the direct physical loss or damage occurred." (Id. at 165.)

On August 24, 2017, China Grove Family Restaurant sustained damages, including business operations losses, from a water

---

court may consider documents submitted by the movant that were not attached to the complaint, so long as they are expressly incorporated in the complaint and are authentic. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016).

intrusion event. (Doc. 1-2 ¶ 5.) Upon the discovery of the water
intrusion, Manoula notified Ohio Security and hired various third-
party contractors to determine the source of the water intrusion,
stop further damage, and remediate its effects. (Id. ¶ 6.)
Actions taken by Manoula included excavating a portion of the
parking lot and interior portions of the restaurant to ascertain
the source of the water intrusion, reconstructing those affected
areas, and taking remedial steps to prevent further damage. (Id.)
As a result of the water damage, Manoula suffered damages including
business interruption; payroll expenses to retain staff for clean-
up, shut down, and reopening; loss of perishable food products;
cost of third-party contractors to excavate and reconstruct
floors, fixtures, signs, and the parking lot; and other reasonably
necessary incidental expenses. (Id. ¶ 7.)

Following these events, Manoula filed a timely claim with
Ohio Security under the Commercial Lines Policy. (Id. ¶ 8.) When
Manoula reported the claim, Ohio Security's representative advised
Plaintiff that the claim was "fully" covered. (Id. ¶ 16.) Ohio
Security issued an advance partial payment to Manoula for expenses
necessary to remedy the damages resulting from the water intrusion.
(Id.) However, Ohio Security later "reversed course and took a
position that only a portion of Plaintiff's claim was 'covered'
under the policy" and "denied responsibility for reimbursement of
expenses Plaintiff had already incurred to begin the process of

3

remediation." (Id. ¶ 17.) Ohio Security then "sought to re-classify the advance loss payment . . . to further reduce or offset the additional amounts payable under the . . . policy based upon Defendant's incorrect, but more restrictive position regarding the extent of the loss covered by the policy." (Id. ¶ 18.) Specifically, Ohio Security's representative "misrepresented the scope of the applicable coverages and improperly applied a loss limitation of $25,000 broadly to multiple aspects of Plaintiff's claim that had separate coverages and coverage limits under the policy that were not subject to the $25,000 loss limitation applied" and "classified a portion of the loss as a second loss incident, but still applied the restrictive policy loss limitation of $25,000." (Id. ¶ 19.) Finally, Ohio Security allegedly "conducted an improper and inadequate" claim investigation and "ignored the investigative findings of third parties regarding the true cause of the loss" in order to apply the $25,000 loss limitation. (Id. ¶ 20.) As a result of the claim, Ohio Security made a partial payment to Manoula. (Id. ¶ 8.)

On June 26, 2018, Manoula sent a letter to Ohio Security detailing the additional sums payable under the policy. (Id. ¶ 11.) On June 25, 2021, Manoula filed suit against Ohio Security in the Rowan County Superior Court. (Id. at 1.) Ohio Security timely removed the action to this court (Doc. 1) and subsequently filed a motion to dismiss for failure to state a claim (Doc. 6),

4

alleging that Manoula's breach of contract claim (Count I) is time-barred and the complaint fails to plead particularized facts in support of its Unfair and Deceptive Trade Practices claim (Count II) (Doc. 7). The motion is now fully briefed and ready for resolution.

## II. ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra

5

v. United States, 120 F.3d 472, 474 (4th Cir. 1997).  With this standard in mind, the court turns to the present motion.

**B.    Breach of Contract**

Manoula's first cause of action alleges breach of contract. Ohio Security argues that Manoula's breach of contract claim is time-barred under the three-year suit limitation provision in the policy or, alternatively, under the three-year statute of limitations for insurance policies in North Carolina.  (Doc. 7 at 9 & n. 7.)  Ohio Security alleges that the limitation period began to run on August 24, 2017, when Manoula sustained loss or damage stemming from a water intrusion event.  (Id. at 9.)  Under Ohio Security's reasoning, Manoula's claim had to be filed by August 24, 2020, and, because Manoula did not file suit until June 25, 2021, its claim is untimely.  (Id.)  In response, Manoula argues that the limitation provision is void under North Carolina General Statute § 58-3-35, which provides "No insurer . . . shall limit the time within any suit or action . . . may be commenced to less than the period prescribed by law."  Manoula argues its claim is timely because the three-year statute of limitations under North Carolina law did not begin to run until June 26, 2018, when Manoula's representative sent a letter demanding additional payment for losses sustained while repairing the premises and reopening its business, and any provision lessening the time Manoula had a right to bring a suit would be void pursuant to § 58-

6

3-35.  (Doc. 11 at 5-6.)

A motion to dismiss under Rule 12(b)(6) "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc).  But a district court may reach the merits of an affirmative defense "if all facts necessary to the affirmative defense clearly appear on the face of the complaint," id. (emphasis and alteration omitted), including where "a complaint show[s] that the statute of limitations has run on the claim," see Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996) (quotation omitted).

Generally, a three-year statute of limitations governs breach of contract claims under North Carolina law.  N.C. Gen. Stat. § 1-52(1); Penley v. Penley, 332 S.E.2d 51, 62 (N.C. 1985).  The limitations period for civil actions starts running when the plaintiff's cause of action accrues.  N.C. Gen. Stat. § 1-15; McCutchen v. McCutchen, 624 S.E.2d 620, 623 (N.C. 2006).  Accrual is measured "from the time when the first injury was sustained" such that "[w]hen the right of the party is once violated, even in ever so small a degree, . . . the cause of action is complete."  Pearce v. N.C. State Highway Patrol Voluntary Pledge Comm., 312 S.E.2d 421, 424 (N.C. 1984); see also Christenbury Eye Ctr., P.A. v. Medflow, Inc., 802 S.E.2d 888, 892 (N.C. 2017) ("It is well settled that where the right of a party is once violated

7

the injury immediately ensues and the cause of action arises."
(citation and quotation marks omitted)). Although "a statute of
limitations should not begin running . . . until [the] plaintiff
has knowledge that a wrong has been inflicted upon him[,] . . . as
soon as the injury becomes apparent to the claimant or should
reasonably become apparent, the cause of action is complete and
the limitation period begins to run." Chisum v. Campagna, 855
S.E.2d 173, 188, reh'g denied, 855 S.E.2d 799 (N.C. 2021)
(citations and quotation marks omitted); see also Thurston Motor
Lines, Inc. v. Gen. Motors Corp., 128 S.E.2d 413, 415 (N.C. 1962)
(explaining that a cause of action accrues "as soon as the right
to institute and maintain a suit arises").

A three-year statute of limitations also applies to insurance
policies "contained in [North Carolina General Statute §] 58-44-
16" pursuant to North Carolina General Statute § 1-52(12). See
N.C. Gen. Stat. § 1-52(12). While North Carolina General Statute
§ 58-44-16 covers "Fire insurance policies," North Carolina courts
have also included homeowner's insurance policies and similar
policies insuring real property. See Page v. Lexington Ins. Co.,
628 S.E.2d 427, 430 (N.C. Ct. App. 2006) (homeowner's property
insurance); Marshburn v. Associated Indem. Corp., 353 S.E.2d 123,
127-28 (N.C. Ct. App. 1987) (same). Claims must be brought within
three years of the date of loss. N.C. Gen. Stat. § 58-44-16(18).

Manoula argues that the action did not accrue until Ohio

8

Security was in "breach of contract" following the June 26, 2018 letter demanding payment. (Doc. 11 at 5.) This argument is unavailing. First, Manoula relies on <u>Penley</u> for the general assertion that under North Carolina law, "a cause of action for breach of contract does not accrue until there has been a breach of the contract." (<u>Id.</u>) While this is a correct statement of law, Manoula cannot rely on this general assertion to seek to extend the date of loss limitation within the terms of the policy. <u>See</u> <u>Quillen v. Allstate Corp.</u>, No. 1:14-CV-00015-MR-DLH, 2014 WL 6604897, at *3 (W.D.N.C. Nov. 20, 2014) (Reidinger, J.) (adopting Memorandum and Recommendation of Howell, Mag. J.) ("Plaintiffs' claim for breach of [an insurance] contract is governed by [North Carolina General Statute §] 1-52(12), and Plaintiffs had three years from the date of the loss to bring a suit against Defendants."); <u>Lloyd v. Grain Dealers Mut. Ins. Co.</u>, 645 S.E.2d 230 (N.C. Ct. App. 2007) (unpublished) ("[A]n insurance policy is a contract and its provisions govern the rights and duties of the parties thereto. . . . Where there is no ambiguity in a policy's language, the courts must apply the plain meaning of the policy language and enforce the policy as written. . . . The language in the insurance contract was clear, an action must be brought within three years after the date . . . [of] loss.") (internal quotations and citations omitted).

Next, Manoula argues that North Carolina General Statute

§ 58-44-16 only applies to fire insurance contracts. Manoula contends that § 58-3-35 prohibits an insurer from "limit[ing] the time within which any suit or action . . . may be commenced to less than the period prescribed by law" pursuant to § 1–52(1). (Doc. 11 at 5.) This is incorrect. The title of § 58-44-16 — "Fire insurance policies; standard fire insurance policy provisions" — is misleading; § 58-44-16 is not limited to fire insurance policies. Instead, "§ 58-44-16 extends to insurance policies covering real property for fire and non-fire losses." Skyline Restoration, Inc. v. Church Mut. Ins. Co., 20 F.4th 825, 831 (4th Cir. 2021) (collecting cases); see Biltmore Avenue Condominium Ass'n Inc. v. Hanover American Insurance Co., No. 1:15CV43, 2015 WL 12731927, at *2 (W.D.N.C. Sept. 3, 2015), report and recommendation adopted, No. 1:15-CV-43-MR-DLH, 2016 WL 406463 (W.D.N.C. Feb. 2, 2016) (applying North Carolina General Statute §§ 1–52(12) and 58-44-16(18) to an alleged breach of a commercial property insurance policy). Because North Carolina courts extend North Carolina General Statute §§ 1–52(12) and 58-44-16 to real property insurance policies, the applicable statute of limitations period the policy may not lessen is three years from the date of loss.

Here, the policy provided that legal action be "brought within three years after the date on which the direct physical loss or damage occurred." (Doc. 1-3 at 165.) Thus, because the policy

10

language does not shorten the limitations period to less than three years from the date of loss, pursuant to North Carolina General Statute § 58-44-16, the provision is valid under § 58-3-35. Manoula's breach of contract claim accrued on the date of loss, August 24, 2017. As such, Manoula was required to bring suit on the claim by August 24, 2020, at the latest. The present suit, filed on June 25, 2021, is therefore untimely, and the claim is time-barred. Manoula's breach of contract claim must accordingly be dismissed.

C. **North Carolina Unfair and Deceptive Trade Practices Act**

Manoula's second cause of action alleges that Ohio Security engaged in one or more "unfair and deceptive acts or practices in or affecting commerce" under North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 ("UDTPA"), and/or Unfair Claim Settlement Practices, N.C. Gen. Stat. § 58-63-15(11) ("Claims Act"), by: (1) misrepresenting pertinent facts and insurance policy provisions relating to coverages under the policy (N.C. Gen. Stat. § 58-63-15(11)(a)); (2) refusing to pay Manoula's claim without conducting a reasonable investigation of the water intrusion (N.C. Gen. Stat. § 58-63-15(11)(d)); (3) not attempting in good faith to effectuate a prompt, fair, and equitable settlement of the claim, in which liability had become reasonably clear (N.C. Gen. Stat. § 58-63-15(11)(f)); and/or (4) attempting to settle the claim for less than the amount to which a reasonable

11

man would have believed he was entitled (N.C. Gen. Stat. § 58-63-15(11)(h)).[2] (Doc. 1-2 ¶¶ 14-24.)

In response, Ohio Security argues that Manoula has failed to plead facts with the requisite specificity as required by Federal Rules of Civil Procedure 9(b) and 12(b)(6), and has "merely parrot[ed] the language of North Carolina's unfair claim settlement statute . . . and [the UDTPA.]" (Doc. 7 at 10, 14.) Manoula responds, without citing any authority, that "[t]he Complaint allegations in the case at bar provide detailed factual allegations of Defendant's misconduct . . . and the allegations identify the specific portions of [the Claims Act] Defendant's conduct violated." (Doc. 11 at 4.)

The UDTPA creates civil liability for any "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1. To sustain a UDTPA claim, a plaintiff must show that: (1) the defendant committed an unfair or deceptive act or practice, or an unfair method of competition, that (2) was in or affecting commerce, which (3) proximately caused actual injury to it. A

_____

[2] Manoula also alleges generally "[t]hat the aforesaid acts and conduct of Defendant[] amount to unfair and deceptive acts or practices in or affecting commerce in violation of [the UDTPA.]" (Doc. 1-2 ¶ 22.) However, it is well settled that a mere breach of contract, even if intentional, cannot sustain a UDTPA claim without a showing of "substantial aggravating circumstances." Stack v. Abbott Labs., Inc., 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013) (quoting Griffith v. Glen Wood Co., 646 S.E.2d 550, 558 (N.C. Ct. App. 2007)). "The type of conduct that has been found sufficient to constitute a substantial aggravating factor has generally involved forged documents, lies, and fraudulent inducements. Id. (collecting cases).

12

trade practice is "unfair" if it "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and it is "deceptive" if it "possesses the tendency or capacity to mislead, or creates the likelihood of deception." First Atl. Mgmt. Corp. v. Dunlea Realty, Co., 507 S.E.2d 56, 63 (N.C. Ct. App. 1998) (citations and brackets omitted). The determination whether an act or practice is unfair or deceptive under the law is a question of law for the court. Gray v. N.C. Ins. Underwriting Ass'n, 529 S.E.2d 676, 681 (N.C. 2000).

Although a violation of the Claims Act is actionable only by the Commissioner of Insurance,[3] the types of conduct listed in the Claims Act can be used to support a private cause of action pursuant to the UDTPA. Elliott v. Am. States Ins. Co., 883 F.3d 384, 396 (4th Cir. 2018). Conduct that violates the Claims Act, even in the absence of a separate claim under that statute, constitutes a UDTPA violation as a matter of law. Gray, 529 S.E.2d at 683-84 (insurer's act of failing to attempt in good faith to effectuate prompt and fair claims settlements is a violation of N.C. Gen. Stat. § 75-1.1 "separate and apart from any violation of N.C.G.S. § 58-63-15(11)[f]"); Country Club of Johnston Cnty., Inc. v. U.S. Fid. & Guar. Co., 563 S.E.2d 269, 279 (N.C. Ct. App. 2002)

---

[3] The Claims Act creates a cause of action in favor of the Commissioner when an insurance company commits or performs any of fourteen specified actions with such frequency as to indicate a general business practice. N.C. Gen. Stat. § 58-63-15(11).

13

(applying rule to all prohibited acts under North Carolina General Statute § 58-63-15(11)); see also Page, 628 S.E.2d at 429.  Such conduct does not require "an additional showing of frequency indicating a general business practice, because such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers."  Elliott, 883 F.3d at 396 (internal citation and quotation marks omitted).  However, "[s]imply invoking Chapter 58-63-15(11) does not suffice to state a claim."  Neshat v. Nationwide Mut. Fire Ins. Co., No. 5:20-CV-664-D, 2021 WL 2168906, at *4 (E.D.N.C. May 27, 2021) (citation and internal quotation marks omitted).

In cases alleging fraud or misrepresentation, a plaintiff "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The particularity requirements of Rule 9(b) also apply to UDTPA claims.  See Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 117 F. Supp. 3d 722, 731 (M.D.N.C. 2015) (applying Rule 9(b) to a § 75-1.1 claim alleging fraudulent misrepresentation); see also Packrite, LLC v. Graphic Packaging Int'l, LLC, No. 1:17CV1019, 2020 WL 7060395, at *7 (M.D.N.C. Dec. 2, 2020) (applying Rule 9(b) to a § 75-1.1 claim alleging fraudulent omission).  Procedurally, a failure to comply with Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6).  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 n.5 (4th Cir. 1999).

14

To meet the requirements of Rule 9(b), a plaintiff must sufficiently describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (quoting Harrison, 176 F.3d at 784). This minimum factual description is "often referred to as the who, what, when, where, and how of the alleged fraud." Id. (citation and internal quotation marks omitted). In cases where a fraud claim incorporates by reference the prior allegations in the complaint, the entire complaint is examined to determine whether the pleading requirements of Rule 9(b) are satisfied. Adkins v. Crown Auto, Inc., 488 F.3d 225, 232 (4th Cir. 2007). "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Harrison, 176 F.3d at 784.

First, Manoula contends that Ohio Security committed an unfair claim settlement practice by "misrepresenting pertinent facts and insurance policy provisions relating to coverages" at issue in violation of North Carolina General Statute § 58-63-15(11)(a). (Doc. 1-2 ¶ 21.) Manoula asserts that Ohio Security's representative advised it that the claim would be "fully" covered

15

but later "reversed course" and only paid a portion of the expenses. (Id. ¶¶ 16-17.) The complaint also alleges Manoula's "representative misrepresented the scope of the applicable coverages and improperly applied a loss limitation of $25,000." (Id. ¶ 19.) However, the complaint fails to identify the individual(s) who allegedly made the misrepresentations, or any individual recipients of the fraudulent statements. See Topshelf Mgmt., 117 F. Supp. 3d at 726. Neither does the complaint identify, moreover, the time or place of any misrepresentation. The complaint only alleges that the misrepresentations were when Manoula "first reported the claim," during the "weeks following the notice of claim submitted to [Ohio Security]," and "when [Ohio Security was] investigating the loss and assessing the available coverage." (Doc. 1-2 ¶¶ 16-17, 19.) These allegations lack sufficient particularity to satisfy the heightened pleading standard for UDTPA claims under Rule 9(b). Cf. Guessford v. Pennsylvania Nat. Mut. Cas. Ins. Co., 918 F. Supp. 2d 453 (M.D.N.C. 2013) (finding the complaint survived a motion to dismiss where the complaint appended correspondence from the insurer that unambiguously misrepresented the terms of the insurance contract.)

Next, Manoula contends that Ohio Security failed to "conduct[] a reasonable investigation of the cause of the water intrusion based upon all available information" in violation of § 58-63-15(11)(d). (Doc. 1-2 ¶ 21.) Simply parroting the language

16

of subsection (d) is not sufficient to survive a motion to dismiss. See *Universal Underwriters Ins. Co. v. Lallier*, 334 F. Supp. 3d 723, 738 (E.D.N.C. 2018). "Rather, a plaintiff must identify specific failures or how those alleged failures damaged them." *Neshat*, 2021 WL 2168906, at *5 (internal citation, quotation marks, and alterations omitted). Here, the complaint alleges that Ohio Security in fact conducted an investigation to "assess[] the cause of the loss," but it alleges in only conclusory fashion that the investigation was "improper and inadequate." (Doc. 1-2 ¶ 20.) Manoula also vaguely references Ohio Security's refusal to consider the "investigative findings of third parties regarding the true cause of the loss." (Id.) Yet Manoula does not allege any facts about the failures of the inspection, how it was unreasonably conducted, or when Ohio Security became aware of the "findings of third parties." (See id.) Manoula's complaint merely suggests that the investigation was unreasonable because it resulted in the application of a $25,000 policy limitation. Manoula need not plead a prima facie case, but its claim that Ohio Security failed to reasonably investigate lacks sufficient facts to raise it above the speculative level. See *Essentia Ins. Co. v. Stephens*, 530 F. Supp. 3d 582, 607 (E.D.N.C. 2021) ("The facts only give rise to an inference that plaintiff possibly, rather than plausibly, failed to reasonably investigate, meaning defendant's right to relief under section 58-63-15(11)(d) only

17

rises to a speculative level."); see also Guessford, 918 F. Supp. 2d at 465 (finding a plausible claim defendant did not conduct a reasonable investigation where the insurance company never investigated the claim and stated it would not consider doing so until plaintiff "reached maximum medical improvement" and until it received "more information," despite the over 1,100 pages of medical records and billing statements supplied by plaintiff.)

Finally, Manoula contends, in conclusory fashion, that Ohio Security did "[n]ot attempt[] in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim after liability had become reasonably clear," and "[a]ttempt[ed] to settle Plaintiff's claim for less than the amount to which a reasonable man would have believed he was entitled" in violation of §§ 58-63-15(11)(f) and 58-63-15(11)(h). (Doc. 1-2 ¶ 21.) "In order to state a claim under subsection (f), the [insured] must plead sufficient factual allegations demonstrating that [the insurer] did not attempt in good faith to effectuate the prompt, fair, and equitable settlement of the claims." Neshat, 2021 WL 2168906, at *4 (internal citation and quotation marks omitted). An insurer "does not have a duty to settle an insured's claim" and "only has a duty to consider settlement of the claim in good faith." Blis Day Spa, LLC v. Hartford Ins. Grp., 427 F. Supp. 2d 621, 635-36 (W.D.N.C. 2006). "Moreover, a plaintiff needs to allege that the insurer's liability is reasonably clear to plead

18

an unfair and deceptive trade practice under subsection (f). A mere disputed claim is not sufficient." _Neshat_, 2021 WL 2168906, at *4; _Clear Creek Landing Home Owner's Ass'n, Inc. v. Travelers Indem. Co. of Conn_., No. 1:12cv157, 2012 WL 6641901, at *4 (W.D.N.C. Dec. 20, 2012) (unpublished) ("The fact that [the insured] may disagree with the assessment of [the insurer] as to the cause . . . does not transform a run of the mill insurance dispute into a tort cognizable under Section 75-1.1."). "A similar standard of reasonably clear liability applies to claims under subsection (h)." _Neshat_, 2021 WL 2168906, at *4 (collecting cases).

Here, Manoula does not allege any factual basis for how Ohio Security engaged in unfair and deceptive trade practices in settling the claim, nor is there any factual support for the claim that Ohio Security's additional liability "had become reasonably clear." (Doc. 1-2 ¶ 21.) Instead, Manoula simply recites the language of the statute and alleges a dispute about the amount owed under the policy —- not bad faith by Ohio Security. The complaint alleges a disagreement over the application of a $25,000 loss limitation and alleges that Ohio Security's position that water infiltrated from backed-up sewer lines was correct only incidentally but disputes it as a primary cause (id. ¶ 20); it does not articulate specifically how Ohio Security's position is unreasonable or not in good faith. Manoula has also not pleaded

any facts that Ohio Security refused to engage in settlement negotiations in bad faith, or that Ohio Security attempted to settle "for less than the amount to which a reasonable man would have believed he was entitled."[4]  See Neshat, 2021 WL 2168906, at *4 ("[A] dispute about the amount owed under the policy" is not sufficient to allege an insurer "engaged in unfair and deceptive trade practices in settling the claim" or acted in "bad faith."); compare Clear Creek Landing, 2012 WL 6641901, at *4 (granting a motion to dismiss a UDTPA claim based on subsection (f) when "Defendant promptly inspected the damage[] . . . [and] provided Plaintiff with a rationale for why it was not covering the entire replacement costs," as "the fact that Plaintiff may disagree with the assessment of Defendant as to the cause . . . does not transform a run of the mill insurance dispute into a tort cognizable under Section 75-1.1. Moreover, the Complaint fails to sufficiently allege that liability was reasonably clear."), with Guessford, 918 F. Supp. 2d at 464 (holding that the insured stated

---

[4] Manoula does not allege that Ohio Security refused to settle the insurance claim or cooperate in the appraisal process outlined in the policy to resolve disagreements. (See Doc. 1-3 at 165 ("If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser . . . [to resolve the dispute.]").)  Manoula also does not allege Ohio Security made any offer to settle the claim that was clearly unreasonable.  It merely alleges that Ohio Security made "partial payments" under the policy, that the insurer refused to continue making payments once a loss limitation provision of $25,000 was satisfied, and that Manoula disagrees.

a claim where the insurer paid less than the amount of total medical expenses, without justification, despite knowing the actual cost of plaintiff's medical expenses). Manoula has thus failed to satisfy the plausibility standard to avoid a motion to dismiss.

As Manoula has failed to plausibly allege a violation of the Claims Act and/or the UDTPA, the UDTPA claim will accordingly be dismissed. Because it is unclear whether the pleading deficiency can be cured, the complaint will be dismissed without prejudice. New v. Thermo Fisher Sci., Inc., No. 1:19CV807, 2020 WL 4572740, at *8 (M.D.N.C. Aug. 7, 2020) (dismissing a claim without prejudice under Rule 9(b) when the "defect can be cured by amendment").

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Ohio Security's motion to dismiss (Doc. 6) is GRANTED and the complaint is dismissed as follows: the breach of contract claim (Count I) is DISMISSED WITH PREJUDICE, and the unfair trade practices claim (Count II) is DISMISSED WITHOUT PREJUDICE.

/s/    Thomas D. Schroeder
United States District Judge

January 13, 2022

21